# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CALVIN JONES, | ) CASE NO. 3:23-CV-02156-JRK |
| Plaintiff, | ) JUDGE JAMES R. KNEPP, II |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) MAGISTRATE JUDGE<br>) CARMEN E. HENDERSON |
| Defendant, | ) **REPORT & RECOMMENDATION** |

## I. Introduction

Plaintiff, Calvin Jones ("Jones" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On September 24, 2021, Claimant filed applications for DIB and SSI, alleging a disability onset date of December 31, 2018. (ECF No. 5, PageID #: 44). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On December 14, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On December 29, 2022, the ALJ issued a written decision finding Claimant was not disabled from March 31,

1

2021—the date of a previous unfavorable determination—until the date of the new decision. (*Id.* at PageID #: 44-60). The ALJ's decision became final on September 7, 2023, when the Appeals Council declined further review. (*Id.*).

On November 3, 2022, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 6, 8). Claimant asserts a single assignment of error: "ALJ Sher incorrectly created and relied on a residual functional capacity (RFC) that produced relevant work while evaluating Mr. Jones under prong five of the sequential process." (ECF No. 6 at 3).

### III. Background

    **A. Relevant Hearing Testimony**

    The ALJ summarized the relevant testimony from Claimant's hearing:

> It was initially alleged the claimant was disabled because of depression, anxiety, bipolar disorder, schizophrenia, parkinsonism, high blood pressure and knee issues (Exhibit B2E/2). The claimant later reported he underwent total left knee replacement followed by manipulation due to the knee not bending beginning November 26, 2021 (Exhibit B6E/3). At the hearing, the claimant testified he lives with his girlfriend in a two-story townhouse. He stated he lived with his girlfriend at her brother's house prior to the townhouse. He testified he has been dating his girlfriend for five years. He stated he had a driver's license, but he did not have the money to get it renewed so he relies on members from his church to get around. He related he leaves the house about twice a week. He testified he graduated high school, although he was in special classes and he is not good at math and making change. He stated he can read at least a third-grade level.
>
> The claimant confirmed that he has depression, knee tears status-post surgeries, anxiety, substance dependence, personality disorder and schizoaffective disorder. He also stated he has developed Parkinson disease about three years ago per his psychiatrist. He testified the Parkinson's disease causes his hands, arms and legs to shake a lot. He stated he has to hold a coffee cup with both hands and it affects his walking sometimes. He testified the medications make it better, but he still shakes when he is sitting. He stated as well that he still has trouble with his left knee with stiffness and swelling. He testified he uses a cane every time he walks and he uses it around the house. He stated he can only walk about 10 minutes and sit for about 10 to 20 minutes. He related he can still volunteer at church when people need help but he does not regularly do it anymore because he would snap at church workers and he had problems focusing. He testified he still attends church every Sunday. He also stated he is able to take a bath every night and he

> has to simply hold on to a rail when getting in and out of the bathtub along with he tries to do household chores like dusting. He testified his girlfriend helps him dress sometimes and he is not allowed to cook anymore after he attempted to kill himself four months ago. He stated he spends his time watching television and he can follow along to cooking and fishing shows.

(ECF No. 5, PageID #: 51).

### B. Relevant Medical Evidence

> The ALJ also summarized Claimant's health records and symptoms:[1]
>
> Regarding his physical health, the record reflects the claimant underwent an injection to the left knee at the beginning of March 2021 (Exhibit B3F/9-10). Despite the injection, ensuing orthopedic records revealed the claimant had a slight varus deformity, medial joint line tenderness to palpation, two to three degrees lacking in full extension, 115 degrees flexion and significant patellofemoral crepitus with passive and active range of motion upon examination, although strength was maintained and the knee was stable with intra-, posterior, varus and valgus stress, in October 2021 (Exhibit B3F/6). A radiologic imaging study also showed worsening arthritic changes (Exhibit B3F/6-7). This resulted in the orthopedic provider recommending the claimant undergo left total knee replacement at the visit (Exhibit B3F/7).
>
> Thereafter, the claimant underwent left total knee replacement surgery at the end of November 2021 (Exhibit B6F/19-20). A post-surgical visit four weeks later displayed the claimant still struggled with flexion, but he was within three to four degrees of full extension, the knee was stable at the anterior, posterior, varus and valgus stress, sensation was maintained distally, the incision was heeling and the neurovascular was intact at the end of December (Exhibit B5F/3). This resulted in the claimant undergoing left knee manipulation under general anesthesia due to the flexion issues at the start of January 2022 (Exhibit B5F/3-4, 24-25). This was followed by physical therapy (Exhibit B7F/6-68).
>
> Fortunately, the treatment appears to have been relatively successful with the claimant having improvement in his knee motion and the claimant being able to push a cart through Walmart for about half an hour by his discharge from physical therapy in mid-February 2022 (Exhibit B7F/6- 7). Primary care records as well demonstrated the claimant was in no acute distress with a normal back without costovertebral angle tenderness and normal balance upon examination that same month (Exhibit B8F/5-6). At another primary care visit in May 2022, the claimant also appeared in no acute distress with normal bowel sounds, no cyanosis of the fingers, normal monofilament of the right and left feet, no cyanosis of the toes, no sensory abnormalities, normal balance, a normal gait and stance and no clubbing of the fingernails (Exhibit B9F/5-6). Primary care records still displayed as well

---

[1] Given that Claimant does not challenge the ALJ's decision considering his mental impairments, only the portions of the decision relevant to his physical impairments are included here.

3

that the claimant was in no acute distress with a normal back without costovertebral angle tenderness and normal balance upon examination during an appointment in August 2022 (Exhibit B11F/11-12).

(ECF No. 5, PageID #: 55).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: bilateral meniscus knee tears/arthritic changes, status-post surgeries; major depressive disorder with psychotic features; anxiety disorder; substance dependence (cocaine, alcohol); personality disorder; and schizoaffective disorder, bipolar type (20 CFR 404.1520(c) and 416.920(c)).

. . .

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: frequent climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent balancing, stooping, kneeling, crouching and crawling. Frequent use of the bilateral lower extremities for operation of foot controls. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions, with few if any workplace changes. No interaction with the general public. Occasional interaction with coworkers and supervisors.

6. The claimant is capable of performing past relevant work as a cook helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2021, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(ECF No. 5, PageID #: 47, 50, 57, 60).

### V. Law & Analysis

#### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r*

5

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises a single issue on appeal, asserting that the ALJ "incorrectly created and relied on a residual functional capacity (RFC) that produced relevant work while evaluating Mr. Jones under prong five of the sequential process." (ECF No. 6 at 3). Claimant argues that the RFC should have included restrictions to account for "off task allowances" based on his need to ice and elevate his left knee when it swells. (*Id.* at 3-4). Claimant argues that while "the vocational expert testified that being off-task more than ten (10) percent of the time would be work preclusive," the RFC "is devoid of any off task behavior that would result from Mr. Jones' need to ice and elevate his left leg above heart level when his left knee swells." (*Id.* at 5).

In response, the Commissioner asserts that Claimant "fails to explain what specific off-task RFC limitations are warranted, and he has not carried his burden to establish that the record supports additional RFC limitations." (ECF No. 8 at 1). Further, the Commissioner argues that Claimant "relies heavily on his own subjective complaints," which the ALJ was not required to accept and which do "not establish that he required time off-task in excess of the 10 percent threshold allowed by employers, in addition to two 15-minute breaks and a lunch break lasting 30 to 60 minutes." (*Id.* at 9-10). With respect to the medical records Claimant cites in support of his argument, the Commissioner asserts that these records predate the relevant period, contain only Claimant's subjective complaints, and/or do not demonstrate that greater RFC limitations were warranted. (*Id.* at 10). Overall, the Commissioner argues that the "ALJ recognized Plaintiff's reports of left knee swelling and stiffness" and "properly considered the record as a

whole in finding that his left knee symptoms improved with treatment," such that substantial evidence supports the RFC. (*Id.* at 10-12).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). An RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if a court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 880 (N.D. Ohio 2011) (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute […] contradictory, objective medical evidence' presented to him.")); *see also* SSR 98-6p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The RFC is for the ALJ to determine; however, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

>Here, the ALJ set forth the following RFC:
>
>>the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: frequent climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent balancing, stooping, kneeling, crouching and crawling. Frequent use of the bilateral lower extremities for operation of foot controls. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions, with few if any workplace changes. No interaction with the general public. Occasional interaction with coworkers and supervisors.

(ECF No. 5, PageID #: 50). The ALJ explained his RFC based on the medical records and opinions from the State agency:

>The record does reflect the claimant underwent total left knee replacement followed by manipulation due to struggles with flexion following the surgery (Exhibits B5F/3-4, 24-25 and B6F/19-20). Yet, the treatment appears to have been successful with orthopedic records demonstrated the claimant was within three to four degrees of full extension, the knee was stable at the anterior, posterior, varus and valgus stress, sensation was maintained distally, the incision was heeling and the neurovascular was intact within four weeks after the total left knee replacement (Exhibit B5F/3). Ensuing physical therapy records as well showed improvement in his knee motion by mid-February 2022 (Exhibit B7F/6-7). While the same physical therapy records noted the claimant was using a walker or cane at that time, he was further advised to slowly wean off them and walk without any device especially during household distances at the appointment (Exhibit B7F/8). Ensuing primary care records also did not signal there was any use of an assistive device with examinations displaying he had normal balance and a normal gait and stance (Exhibits B8F/5-6, B9F/5-6 and B11F/11-12).
>
>Moreover, orthopedic records prior to the surgery found the claimant's strength was maintained, she was only lacking two to three degrees in full extension and his knee was stable with intra-, posterior, varus and valgus stress (Exhibits B3F/6). Primary care records prior to the surgery also exhibited the claimant's balance was normal, deep tendon reflexes were normal and his gait and stance were normal (Exhibit B5F/13). The above supports the initial State agency medical consultants' opinions that the claimant remains capable of work at the medium exertional level with frequent climbing ladders, ropes or scaffolds rather than the State agency medical consultant's opinion at reconsideration that the claimant is limited to work at the light exertional level with no climbing ladders, ropes or scaffolds. The claimant's lack of treatment with the orthopedic provider following the four-week post-operative appointment and the claimant's continued treatment simply with a primary care provider, a general practitioner, after he was discharged from physical therapy in February 2022 also appears consistent with the same. As such, I find the initial State agency medical consultant's opinion is

8

more persuasive and the residual functional capacity finds the claimant is capable of work at the medium exertional level with frequent climbing ladders, ropes or scaffolds herein. The above also supports and is consistent with a cane or walker not being medically necessary.

Similarly, pre- and post-surgical orthopedic records demonstrating the claimant was within a few degrees of full extension, the knee was stable at the anterior, posterior, varus and valgus stress and strength was maintained upon examination appears to support the initial State agency consultant's opinion as well that the claimant can frequently kneel, crouch and crawl rather than the State agency medical consultant's opinion at reconsideration that the claimant is limited to occasional kneeling, crouching and crawling (Exhibits B3F/6 and B5F/3). The claimant's lack of treatment with the orthopedic provider after the four-week post-operative appointment and the claimant's continued treatment merely with a primary care provider, a general practitioner, after he was discharged from physical therapy in February 2022 also appears consistent with the same. Thus, I find the initial State agency medical consultant's opinion is more persuasive and the residual functional capacity herein finds the claimant is capable of frequent kneeling, crouching and crawling.

On the other hand, pre- and post-orthopedic records showing limited flexion at the left knee supports the initial State agency medical consultant's opinion that the claimant is limited to frequent climbing ramps and stairs rather than the State agency medical consultant's opinion at reconsideration that the claimant would have no limitations on such an activity (Exhibits B3F/6 and B5F/3). The claimant requiring manipulation under general anesthesia after the surgery due to limitations in flexion as well appears consistent with the same (Exhibits B5F/3-4, 24-25). As a result, I find the initial State agency medical consultant's opinion is more persuasive in this area as well and the residual functional capacity finds the claimant is limited to frequent climbing ramps and stairs herein.

Otherwise, pre- and post-orthopedic records reveal the claimant had limited flexion at the left knee while otherwise only being a few degrees away from full extension, the knee was stable at the anterior, posterior, varus and valgus stress and strength maintained upon examination supports both State agency medical consultants' opinions that the claimant is capable of frequent balancing and stooping (Exhibits B3F/6 and B5F/3). Pre- and post-primary care records also reflecting the claimant had normal balance and/or a normal gait and stance and no sensory abnormalities appears to support the same (Exhibits B5F/13, B8F/5-6, B9F/5-6 and B11F/11-12). The claimant's lack of treatment with the orthopedic provider after the four-week post-operative appointment and the claimant's continued treatment merely with a primary care provider, a general practitioner, after he was discharged from physical therapy in February 2022 appears consistent with the same too. I find both State agency medical consultants' opinions are persuasive as a result and the residual functional capacity finds the claimant is limited to frequent balancing and stooping herein.

In addition, pre- and post-orthopedic records revealing the claimant had limited

9

>flexion at the left knee while otherwise only being a few degrees away from full extension, the knee was stable at the anterior, posterior, varus and valgus stress and strength maintained upon examination supports the initial State agency medical consultant's opinion that the claimant continues to be limited to frequent use of the bilateral lower extremities for operation of foot controls (Exhibits B3F/6 and B5F/3). The claimant requiring manipulation under general anesthesia after the surgery due to limitations in flexion as well appears consistent with the same (Exhibits B5F/3-4, 24-25). Consequently, I find that part of the initial State agency medical consultant's opinion that the claimant continues to be limited to frequent use of the bilateral lower extremities for operation of foot controls and the residual functional capacity adopts such herein.

(ECF No. 5, PageID #: 55-57).

Based on this discussion, this Court agrees that the RFC is supported by substantial evidence. The ALJ provided a detailed discussion of the medical evidence, citing Claimant's improvement following knee surgery and lack of further orthopedic treatment to support his conclusion that greater limitations were not warranted. The ALJ also relied on the State agency opinions in formulating the RFC. "An RFC determination that is supported by the medical opinions of state agency physicians is generally supported by substantial evidence." *Sittinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at *13 (N.D. Ohio Sept. 7, 2023), *report & recommendation adopted sub nom.*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023); *see also Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-CV-1878, 2022 WL 361038, at *6 (N.D. Ohio Jan. 14, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision.") (collecting cases), *report & recommendation adopted sub nom.*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022).

Additionally, nothing in the record indicates that an accommodation for "off task time" should have been included in the RFC. While Claimant cites a note advising him to "[c]ontinue to ice as needed to control pain and swelling as you become more active," this note was included in his discharge instructions from his left knee manipulation rather than as an ongoing treatment

recommendation. (ECF No. 5, PageID #: 853). As noted by the ALJ, Claimant continued to report improvement in his knee following this procedure. (*See id.* at PageID #: 881-82). Even if the ALJ credited Claimant's own testimony that he was still having trouble with his knee because it swelled "very often" and he experiences stiffness making it hard for him to walk "sometimes," this testimony does nothing to establish set limitations that Claimant would be off task over the permissible amount of time to ice his knee. (*See id.* at PageID #: 87-88).

Overall, substantial evidence supports the ALJ's RFC determination and the Court must defer to it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Further, because the RFC is supported by substantial evidence, the ALJ properly relied on the vocational expert's testimony without considering additional off task limitations. *See Ward v. Colvin*, 5:12CV2722, 2013 WL 6507344, at *13 (N.D. Ohio Dec. 12, 2013) ("An ALJ is only required to incorporate into the hypothetical question, limitations that he or she accepts as credible.").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: May 30, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).